### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

Herschel Collins            :
                                  :
v.                        :       Case No. 3:04cv1024 (JBA)
                                  :
West Hartford Police Dept.,  :
et al.                 :

### Ruling on Defendants' Motions to Dismiss [Docs. ## 72, 74, 75, 80, 87, 89]

Pro-se plaintiff Herschel Collins ("Collins") commenced this action against thirteen defendants alleging a conspiracy to deprive him of his constitutional rights, and defamation, arising from an incident in which he moved his elderly mother, Georgia Jackson, from the Brookview Health Care Facility into his care. Defendants, including the West Hartford Police Department; the Town of West Hartford; Captain Coppinger of the West Hartford Police Department; the Brookview Health Care Facility; Barbara Di Cocca, an employee of the Brookview Health Care Facility; Lisa Silvestre, conservator of Georgia Jackson; Sidney Elkin, Judge of Probate for the District of West Hartford; Fox Channel 61; WTNH-8 (LIN Television Corporation); and NBC-30, have now moved to dismiss.[1]  For the reasons discussed below, defendants' motions

---

[1]Defendants also include Margaret Murphy, Charles Shimkus, and the Hartford Courant.  As these defendants have not been served and have not appeared in this case, and over 120 days have passed, this action is dismissed without prejudice as to these defendants.  See Fed. R. Civ. P. 4(m).  Although the Hartford Police Department and the Manchester Police Department are included in the caption of plaintiff's complaint, they are named

1

to dismiss are GRANTED.

## I.  Background

According to plaintiff's complaint, which the Court accepts as true at this stage of the proceedings, plaintiff's mother, Georgia Jackson ("Jackson"), has resided at Brookview Health Care Facility ("Brookview") since December 23, 2003, after suffering a stroke.  <u>See</u> Complaint [Doc. # 1] at 2-3.  Collins objected to her transfer to the nursing home, and was disappointed with the treatment she was experiencing there.  <u>Id</u>. at 3.  Collins alleges that after he requested a copy of a signed permission to treat form from Brookview and DiCocca, they commenced a proceeding in the West Hartford Probate Court for appointment of a conservator for Jackson.  <u>Id</u>. at 4.  According to plaintiff, on or about April 2, 2004, Veronica Halpine, a legal services attorney, was appointed as attorney for Jackson, and with Jackson's consent, drafted a second Power of Attorney for her to sign giving Collins Durable Power of Attorney over her and her affairs.  <u>Id</u>.  In the conservatorship proceeding, however, West Hartford Probate Judge Sidney Elkins appointed Margaret Murphy as Jackson's attorney and Charles Shimkus as guardian ad litem.  Collins alleges that "Attorney Charles Shimkus conspired with Barbara DiCocco and Brookview Health Care to deprive Georgia Jackson the right to

---

as "hostile witness[es] for plaintiff," and similarly have not been served as defendants.

appoint the person of her choice to handle her affair, by recommending to Sidney Elkins that Herschel Collins a Blackman would not act in Georgia Jackson best interest and should not be considered as conservator."  Id. at 5.

On or about April 20, 2004, Jackson obtained legal advice from her former attorney, Michael Peck, and then contacted Collins and asked him to pick her up at Brookview.  Id. at 5. Collins complied with her wishes, and Jackson signed herself out of the facility.  Id.  On or about April 21 or 22, 2004, Brookview and DiCocca contacted Judge Elkins about appointing a conservator to return Jackson to the nursing home.  Judge Elkins voided Collins' durable power of attorney, and appointed Lisa Silvestre as conservator for Jackson.  Id.; see also Response to Motion for More Definite Statement [Doc. # 63] at 1.

Collins alleges that DiCocca and Silvestre, knowing that Jackson had signed herself out of Brookview, conspired with West Hartford Police Captain Coppinger to have the West Hartford Police arrest Collins for kidnapping Jackson.  Id. at 5-6. Coppinger, DiCocca, and Brookview contacted all news media and put out a nationwide all points bulletin for Collins.  Id. at 6. Subsequently, the defendant television stations aired reports that Collins had kidnapped his mother from Brookview, was a felon who had been arrested 41 times, and was considered armed and dangerous.  The television reports gave Collins' car and license

3

plate number, and stated that Jackson had a feeding tube and needed her medications to survive.  Id.

After learning of the media reports, and that the West Hartford police had surrounded Jackson's home, Collins contacted the NBC-30 television station to "air the truth," and claims that NBC notified the West Hartford police of his location before the interview in order to set him up.  Id. at 7.  The West Hartford police, along with the Manchester police, "invaded the home of Estelle Jessup" where, Collins implies in his complaint, Georgia Jackson was being interviewed by NBC news.  See Response to Motion for More Definite Statement [Doc. # 63] at 3.  Jackson was taken to a hospital in Manchester, after which Judge Elkins ordered Silvestri to return Jackson to Brookview.

Collins alleges a conspiracy by DiCocca, Brookview, and Judge Elkins to improperly remove Collins' power of attorney, on account of his race, and appoint Silvestri as conservator.

Further, Collins claims that Judge Elkin violated his right to equal protection under the 14th Amendment by giving Silvestri orders to have the West Hartford police arrest him on account of his race.  He further claims race discrimination stemming from Judge Elkins' order that Lisa Silvestri take possession of Jackson's bank account, and place a lis pendens against property in Hartford after transfer of title from Jackson to Collins, when he should have known that this action would harm Collins by

4

forcing the foreclosure or sale of the property.

Collins' allegations as to the Town of West Hartford, the West Hartford Police Department, and Captain Lori Coppinger center on the all-points bulletin that was issued for his arrest, which he claims was part of a conspiracy "to do bodily harm to Herschel Collins person in the form of arrest or being killed for kidnapping Georgia Jackson from Brookview Health Care Facility in the Town of West Hartford, where no Blacks or Minority Citizen from Hartford can afford to stay." Id. at 2. Collins claims unreasonable search, unlawful restraint, and violations of the 4th, 5th, 9th, and 14th Amendments to the Constitution.

Collins' allegations of defamation appear to extend to all defendants, as he states that statements made by Silvestri, DiCocca, Murphy, Shimkus, and Brookview that he was a danger to Jackson were untrue, that the defendant news organizations should have known that their reports were untrue, that the news stations declined to carry a retraction of their previous untrue reports of the alleged kidnapping, and that these reports interfered with his medical recovery from heart surgery.

Collins seeks compensatory and punitive damages of $20,000,000 from each defendant.

## II.  Standard

When deciding a 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all

5

reasonable inferences in favor of the pleader.  <u>Hishon v. King &</u>
<u>Spalding</u>, 467 U.S. 69, 73 (1984).  A complaint should not be
dismissed for failure to state a claim unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of
his claim which would entitle him to relief.  <u>Swierkiewicz v.</u>
<u>Sorema N.A.</u>, 534 U.S. 506, 513-14 (2002); <u>Conley v. Gibson</u>, 355
U.S. 41, 45-46 (1957).  "The issue is not whether a plaintiff
will ultimately prevail but whether the claimant is entitled to
offer evidence to support the claims.  Indeed it may appear on
the face of the pleadings that a recovery is very remote and
unlikely but that is not the test." <u>Scheuer v. Rhodes</u>, 416 U.S.
232, 236 (1974).

## III.  Discussion

Plaintiff's constitutional claims against those defendants
acting under color of state law are brought pursuant to 42 U.S.C.
§§ 1983, 1985, and 1986. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State ... subjects, or
> causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured....

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire .
> . . for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and
> immunities under the laws . . . [and] do, or cause to be
> done, any act in furtherance of the object of such

6

> conspiracy, whereby another is injured in his person or
> property, or deprived of having and exercising any right or
> privilege of a citizen of the United States, the party so
> injured or deprived may have an action for the recovery of
> damages occasioned by such injury or deprivation, against
> any one or more of the conspirators.

Section 1986 holds liable anyone who has knowledge of and fails
to prevent a conspiracy in violation of Section 1985.

The Court concludes that plaintiff has failed to state a
claim on which relief may be granted under all of these federal
causes of action.  First, the claims against Probate Judge Elkins
in his official capacity are barred by the Eleventh Amendment,
and because an individual sued in his official capacity is not a
"person" within the scope of § 1983.  The claims against Judge
Elkins in his individual capacity, and against conservator Lisa
Silvestri, are barred by the principle of absolute judicial
immunity.  As to those claims against the Town of West Hartford
and the West Hartford police department, plaintiff's claims fail
under § 1983 because he has not identified a municipal policy or
custom causing his injury.  The claims against Captain Coppinger
also cannot survive the motion to dismiss, because the
allegations as to her entry of information into the NCIC system
is not cognizable as an equal protection violation.  Moreover,
plaintiff's § 1985 and 1986 conspiracy claims are dismissed as he
has not claimed that the conspirators were motivated by
discriminatory animus toward him.  Finally, plaintiff's claims of
defendants' publication of false information about him are

7

insufficient to give rise to a due process deprivation, and
therefore do not state a federal claim.  Because the Court
concludes that all federal claims must be dismissed, it declines
to exercise supplemental jurisdiction as to the defamation claims
against defendants.[2]

## A.   Probate Judge Sydney W. Elkin and Conservator Lisa Silvestri

Because plaintiff seeks only retrospective relief in the
form of money damages, he has failed to state either an official
capacity or personal capacity §1983 claim against Judge Elkin.[3]
 "States-- and state officers, if sued in their official
capacities for retrospective relief--are immunized by the

---

[2]The Court has reviewed plaintiff's opposition to
defendants' motions to dismiss [Doc. # 92], and is satisfied that
the allegations and inferences drawn from plaintiffs' complaint,
viewed in the light most favorable to plaintiff, are not
cognizable under §§ 1983, 1985, and 1986.  In his opposition,
plaintiff calls attention to a separate suit he has filed against
Brookview Health Care and John Dempsey Hospital, among others,
based on the poor treatment his mother received and the absence
of permission to provide certain medical treatment.  Plaintiff's
complaint in that action was dismissed for lack of jurisdiction,
and the case closed.  See Endorsement Order in Collins, et al. v.
Brookview Corp., No. 3:04cv618 (RNC) [Doc. # 70].  Attached to
his opposition, plaintiff has included an affidavit by Estelle
Jessup, which states that she, and not Herschel Collins, picked
up Georgia Jackson from Brookview, after Jackson signed herself
out.  This is at odds with plaintiff's complaint, see [Doc. # 1]
at 5 ("Herschel Collins complied with the wishes of Georgia
Jackson and picked her up at Brookview Health Care Facility"),
but is not material to the federal claims at issue in this case.

[3]Plaintiff has claimed the Judge Elkin "use[d] his official
capacity in a personal manner," the Court will view the claims as
brought in Judge Elkin's official and individual capacity.

Eleventh Amendment from suits brought by private citizens in federal court and, in any event, are not "persons" subject to suit under § 1983." K & A Radiologic Technology Services, Inc. v. Comm. of Dept. of Health on New York, 189 F.3d 273, 278 (2d Cir. 1999) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 & n. 10 (1989); Edelman v. Jordan, 415 U.S. 651, 664-68 (1974)).

The Eleventh Amendment immunizes states, and state officials sued in their official capacity, from federal court retrospective monetary relief.  As the Supreme Court explained in Ford Motor Co. v. Department of Treasury, 323 U.S. 459 (1945), "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Id. at 464; see also Edelman, 651 U.S. at 663 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

Further, as the Supreme Court reasoned in Will, Section 1983's application to "[e]very person" excludes the States, and although "state officials literally are persons," an official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office.  As

9

such it is no different from a suit against the State itself."
Will, 491 U.S. at 71 (citation omitted).   Accordingly, any §
1983 claim against Judge Elkin in his official capacity is
dismissed.

Judge Elkin is also entitled to absolute immunity from
individual liability for monetary relief for his "judicial acts."
"Although unfairness and injustice to a litigant may result on
occasion, 'it is a general principle of the highest importance to
the proper administration of justice that a judicial officer, in
exercising the authority vested in him, shall be free to act upon
his own convictions, without apprehension of personal
consequences to himself.'" Mireles v. Waco, 502 U.S. 9, 10 (1991)
(quoting Bradley v. Fisher, 13 Wall. 335, 347 (1872)).   Judicial
immunity is not overcome by allegations of bad faith or malice,
Mireles, 502 U.S. at 11, and a judge remains absolutely immune
for his judicial acts "even if his exercise of authority is
flawed by the commission of grave procedural errors." Stump v.
Sparkman, 435 U.S. 349, 359 (1978).

Judicial immunity may be overcome only if (1) the actions
alleged were "not taken in the judge's judicial capacity," or (2)
if the "actions, though judicial in nature, [were] taken in the
complete absence of all jurisdiction." Mireles, 502 U.S. at 11-
12 (citations omitted).   As all of plaintiff's claims against
Judge Elkin arise out of alleged actions that clearly fall within

the scope of his authority as a Probate Court Judge, over which
he had jurisdiction under Connecticut statutes and judicial
precedent, plaintiff cannot overcome judicial immunity.

Among the actions challenged in plaintiff's complaint were
Judge Elkin's appointment of a conservator for Georgia Jackson
and removal of Collins' power of attorney, placement of a lis
pendens on Jackson's home, taking possession of Jackson's bank
account, and selling Jackson's home.  Each of these actions is
properly viewed as a judicial act within the jurisdiction of the
probate court.  Connecticut General Statutes § 45a-650, for
example, authorizes the Probate Court to appoint a conservator of
another's estate if after a hearing the person is found to be
"incapable of managing his or her affairs," and to appoint a
conservator of the person if he or she is found to be "incapable
of caring for himself or herself."  § 45a-650(d).  The
conservator is authorized by statute to "manage all the estate
and apply so much of the net income thereof, and, if necessary,
any part of the principal of the property, which is required to
support the ward and those members of the ward's family whom he
or she has the legal duty to support and to pay the ward's debts,
and may sue for and collect all debts due the ward."  Conn. Gen.
Stat. § 45a-655(a).  Upon the written application of the
conservator, a probate court may authorize the sale of real
property in this state.  See Conn. Gen. Stat. § 45a-164.  The

Probate Court is also required to "order the conservator to immediately record, in the land records of each town where the real property is situated, a certificate setting forth the name and residence of the person, the name of the conservator, the date of his appointment and the court by which the appointment was made."  Conn. Gen. Stat. § 45a-658.

Plaintiff also alleges that Judge Elkin gave Lisa Silvestri "orders to have the West Hartford police apprehend and arrest" him.  Response to Order for More Definite Statement [Doc. # 63] at 1.  While issuing a warrant for an arrest is not within the jurisdiction of the probate court, Collins has not alleged that such a warrant was issued by Judge Elkin, nor has he alleged that he was in fact arrested.  Instead, Collins has alleged that Judge Elkin directed the conservator to file a criminal complaint with the police concerning Jackson.  Such action is within the scope of his authority as probate judge, because a conservator under Connecticut law has the "duty and responsibility for the general custody" of the protected person, including the "duty to provide for the care, comfort and maintenance of the ward,"  Conn. Gen. Stat. § 45a-656a, and the conservator remains "under the supervision and control of the Probate Court" in exercising these powers.  Elmendorf v. Poprocki, 155 Conn. 115, 118 (1967).

Because plaintiff's allegations against Judge Elkin arise from his judicial acts within the scope of his jurisdiction as

Probate Judge, he is immune from liability, and plaintiff's §
1983 claim against Judge Elkin for alleged constitutional
violations cannot prevail.  Similarly, as plaintiff's
constitutional claims against Lisa Silvestri challenge her
actions as an agent of the Probate Court, taken under the orders
or direction of Judge Elkin, the constitutional claims against
Silvestri also must fail.  See <u>Valdez v. Denver</u>, 878 F.2d 1285,
1286 (10th Cir. 1989) ("official charged with the duty to
executing a facially valid court order enjoys absolute immunity
from liability for damages in a suit challenging conduct
prescribed by that order.")(10th Cir. 1989); <u>Cok v. Cosentino</u>,
876 F.2d 1, 3 (1st Cir. 1989) (holding that guardian ad litem and
conservator appointed by family court judge "were involved in the
adjudicative process and shared in the family court judge's
absolute immunity.").

### B. West Hartford Police Department, Town of West Hartford, and Captain Lori Coppinger

Plaintiff's § 1983 claims against the Town of West Hartford
and West Hartford Police Department must be dismissed because he
has not identified a municipal policy or custom that caused his
injury.  In <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690
(1978), the Supreme Court held a municipality may be held liable
under section where "the action that is alleged to be
unconstitutional implements or executes a policy statement,
ordinance, regulation, or decision officially adopted and

promulgated by that body's officers," or where the
"constitutional deprivations [occurred] pursuant to governmental
'custom' even though such a custom has not received formal
approval through the body's official decisionmaking channels."
Id. at 690-91.  Monell as held, however, that "a municipality
cannot be held liable solely because it employs a tortfeasor—or,
in other words, a municipality cannot be held liable under § 1983
on a respondeat superior theory." Id. at 691.  "[I]t is when
execution of a government's policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to
represent official policy, inflicts the injury that the
government as an entity is responsible under § 1983." Id. at
694; see also Pembaur v. Cincinatti, 475 U.S. 469, 479 (1986)
(plurality opinion) ("The 'official policy' requirement [is]
intended to distinguish acts of the municipality from the acts of
employees in order to limit municipal liability to conduct for
which the municipality is actually responsible.").

   Here, as to the municipal defendants, plaintiff alleges the
following:

> West Hartford Police Department with instructions from
> Captain Lori Coppinger acted immediately, by placing
> Herschel Collins name on the N.C.I.C. Computer for all
> points bulletin on his where about and apprehension for
> kidnapping of an elderly woman needing her medications, and
> has a feeding tube, and also stated Herschel Collins is
> armed and dangerous, while driving black.  The West Hartford
> Police Department Profiled Herschel Collins worldwide,
> putting his license plate number out for every law
> enforcement officer to take a shoot at him.  West Hartford

>    Police Department tapped phone lines of friends, confiscated
>    Herschel Collins checks from the pharmacies where
>    prescription had been filled, had Hartford Police surround
>    Hershel Collins resident scaring his children.

Response to Motion for More Definite Statement [Doc. # 63] at 2.

The Court can find no implication in plaintiff's complaint that a policy or custom of the Town of West Hartford or the West Hartford Policy Department caused his constitutional injury. While "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official--even a policymaking  official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  Pembaur, 475 U.S. at 481-82; see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) (rejecting claim that unconstitutional use of force gave rise to municipal liability because any conceivable municipal "policy" implicated, such as "establishment of police force," was too far removed from any constitutional violation).  Collins' allegations here are properly viewed as challenges to discretionary actions by officers acting in their official duties, or to an unconstitutional application of a valid policy such as placing a suspect's name into the N.C.I.C. system, and not as

15

constitutional challenges to official policy.  As such, plaintiff has not adequately alleged a <u>Monell</u> claim for municipal liability.[4]

Defendant Coppinger may be liable under § 1983 for her actions occurring "under color of state law," which deprived plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States."  42 U.S.C. § 1983. As to those actions attributed to defendant Coppinger, however, the Court concludes that plaintiff has not adequately alleged deprivation of any constitutional right.  Because he has not alleged that he was arrested, that his home was searched, or that any force was used against him,[5] plaintiff's constitutional claim rests entirely on Coppinger's alleged issuance of an all points bulletin and placement of his name and the fact that he was

---

[4]Plaintiff's § 1983 claims against the West Hartford Police Department also must be dismissed because the municipality itself, not an agency or instrumentality of the municipality, is the proper legal entity subject to suit under Section 1983.  <u>See</u> <u>Dean v. Barber</u>, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit" under § 1983); <u>Reed v. Hartford Police Department</u>, No. 3:03cv2147 , 2004 WL 813028, at *2 (D.Conn. April 6, 2004) (holding that municipal police department not itself subject to suit under § 1983 because "[a] municipal police department . . . is not a municipality. Rather, it is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function.").

[5]While plaintiff alleges that the West Hartford police "invaded the home of Estelle Jessup," and that the police took Jackson to a hospital in Manchester, neither Jessup nor Jackson are parties to this case, and plaintiff has not plead any facts showing a protectable interest in the Jessup home.

"driving black" into the N.C.I.C. system, with the result that the Hartford police surrounded his house and frightened his children.  The claim, therefore, is viewed as one of selective enforcement,under the Equal Protection Clause of the 14th Amendment.

"To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: '(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir.1999) (internal quotation marks and citations omitted)).  An equal protection claim premised on a "class of one" may lie "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir.2001) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

While plaintiff has alleged that Captain Coppinger issued the all points bulletin because of plaintiff's race, he has also

alleged that Brookview Health Care Facility employees and the
conservator that had been appointed for his mother filed a
complaint with the West Hartford police accusing him of
"kidnapping" his mother from her nursing home.  Plaintiff has not
alleged that Coppinger knew the conservator's and nursing home's
accusations were false.  On the face of plaintiff's complaint,
therefore, defendant Coppinger had a legitimate basis for issuing
the all points bulletin, given the information provided by the
nursing home and the conservator, even if the accusations
ultimately were found unwarranted.  Further, while plaintiff's
complaint, construed broadly, may be viewed as alleging
discriminatory animus by defendant Coppinger, he has not alleged
that the procedure defendant Coppinger implemented upon receiving
the complaint would not have been followed had the complaint
involved a similarly situated person of a different race.

While the Court is mindful that in light of the liberal
pleading requirements of Fed. R. Civ. P. 8, disposition of a
selective enforcement claim at the motion to dismiss stage should
be done only with great circumspection, on the allegations of
this case plaintiff simply has not stated a cognizable equal
protection claim.  The accusations identified in plaintiff's
complaint as leading to the issuance of the all points bulletin
distinguish this case.  Because plaintiff has alleged a police
response to a particularized complaint from third parties about

plaintiff's actions in removing his mother from her nursing home, the legitimacy of Captain Coppinger's action — placing Collins' information in the N.C.I.C. system — appears on the face of the complaint.  Unlike cases involving racial profiling in traffic stops, see, e.g., Washington v. Lambert, 98 F.3d 1181 (9th Cir. 1996), or a police failure to protect, see, e.g., DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003), neither credibility assessments of the officer's personal observations, nor historical or statistical comparison, would shed further light on the legitimacy of Coppinger's action.

**C.  Federal Conspiracy Claims**

The Court construes plaintiff's allegation that "Barbara DiCocca, Lisa Silvestri, Captain Lis Coppinger, Town of West Hartford, West Hartford Police Department, Brookview Corporation, and Brookview Health Care Facility Conspired to do bodily harm to Herschel Collins person in the form of arrest or being killed for kidnapping Georgia Jackson from Brookview Health Care Facility in the Town of West Hartford, where no Blacks or Minority Citizen can afford to stay," Response to Motion for More Definite Statement [Doc. # 63] at 2, as grounded in 42 U.S.C. § 1985(3).[6]

---

[6]Although plaintiff has alleged several conspiracies involving various groupings of defendants, only the claim involving the police complaint made by DiCocca, Brookview, and Silvestri potentially implicates Section 1985(3).  Other alleged conspiracies involve judicial acts that are immune from suit (e.g., Judge Elkin's appointment of Charles Shimkus and Margaret Murphy as attorney and guardian for Georgia Jackson, "in the

"To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Gray v. Town of Darien, 927 F.2d 69, 73(2d Cir. 1991) (citing United Brotherhood of Carpenters & Joiners of America v. Scott, 463 U.S. 825, 828-29 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).  Although a Section 1985 conspiracy may involve private actors, see Griffin, 403 U.S. at 102, plaintiff must allege that an "invidiously discriminatory motivation" accompanied the conspirator's actions.  Id.  As plaintiff has alleged that the object of defendants' conspiracy was to have him arrested for kidnapping in order to return his mother to the nursing home in West Hartford, his allegation as to the exclusion of minorities from West Hartford cannot be linked

---

absence of Georgia Jackson, and Hershel Collins being present, because they were to [sic] Black to have so much, when they had non [sic]."), or did not involve an alleged deprivation of plaintiff's equal protection rights (e.g., Barbara DiCocca is alleged to have sought appointment of conservator of Georgia Jackson after "being confronted [by plaintiff about] where is the permission to treat form that should have been signed by Georgia Jackson or Hershel Collins giving Brookview Health Care Facility written permission to hold Georgia Jackson and give her medications.").

to defendants' action.[7]

**D.  Defamation Claims against All Defendants**

Construed broadly, plaintiff's complaint alleges defamation by all defendants, including the state and municipal defendants. Nonetheless, it is clear that the defamation claim must be viewed strictly as a state law tort, and not a constitutional violation within the ambit of § 1983.  It is well established that "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation," Siegert v. Gilley, 500 U.S. 226, 233 (1991); Paul v. Davis, 424 U.S. 693, 708-09 (1976), because "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause." Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004).  Thus, in what is commonly described as the "stigma-plus" doctrine, a § 1983 plaintiff may establish a due process violation based on deprivation of a liberty interest only by alleging stigma or damage to reputation in connection with the deprivation of a tangible interest like employment.  See Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities, 64 F.3d 810, 817 (2d Cir. 1995); Donato v. Plainview-Old Bethpage

---

[7]As a valid § 1985 claim is a prerequisite to § 1986, plaintiff's claims under § 1986 are dismissed as well.

<u>Central School District</u>, 96 F.3d 623, 630-633 (2d Cir. 1996).
Because plaintiff here has not alleged a deprivation of a
tangible interest beyond the reputational harm from the false
publication of the all points bulletin, he has failed to state a
claim under § 1983, and his complaint must therefore be read as
stating exclusively a state law claim of defamation against all
defendants.

Having dismissed the federal claims which confer subject
matter jurisdiction, this Court declines to exercise its
supplemental jurisdiction over the remaining state law defamation
claims.[8]  <u>See</u> 28 U.S.C. § 1367(c)(3) (providing that a district
court may decline to exercise supplemental jurisdiction over a
claim where "the district court has dismissed all claims over
which it has original jurisdiction"); <u>United Mine Workers of
America v. Gibbs</u>, 383 U.S. 715, 726 (1966) ("[N]eedless decisions
of state law should be avoided both as a matter of comity and to
promote justice between the parties, by procuring for them a
surer-footed reading of applicable law.  Certainly, if the
federal claims are dismissed before trial, even though not
insubstantial in a jurisdictional sense, the state claims should
be dismissed as well."); <u>Valencia ex rel. Franco v. Lee</u>, 316

---

[8]As plaintiff has provided a Connecticut address in his
complaint, and has not alleged that any defendant has other than
a Connecticut residence, principal place of business, or place of
incorporation, there is no basis for diversity jurisdiction.

F.3d 299, 306 (2d Cir. 2003) (dismissal of federal claims at a relatively early stage in the proceedings supports denial of exercise of supplemental jurisdiction).

**IV.  Conclusion**

For the foregoing reasons, the motions to dismiss by defendants are GRANTED, and all federal § 1983, § 1985, and § 1986 claims are dismissed.  There are no further federal claims remaining in this suit, and this Court declines to exercise supplemental jurisdiction over the remaining state claims. Accordingly, the Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

_____
_____Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 27th day of July, 2005.**